IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PENDLETON DIVISION

WAIBEL RANCHES, LLC
an Oregon Limited Liability
Company; and WAIBEL
PROPERTIES, LLC, an Oregon
Limited Liability Company

              Plaintiffs,

   v.

UNITED STATES OF AMERICA;

              Defendant.

No. 2:15-cv-02071-HL

**FINDINGS AND
RECOMMENDATION**

HALLMAN, United States Magistrate Judge:

Plaintiffs Waibel Ranches and Waibel Properties assert this quiet title and breach of contract action against Defendant, the United States of America ("United States"). This matter comes before the Court on Defendants' Motion to Dismiss for lack of jurisdiction. The Court

Page 1 – FINDINGS AND RECOMMENDATION

heard oral argument on the Motion to Dismiss on March 31, 2022.  ECF 143.  For the reasons set forth below, Defendant's Motion to Dismiss should be GRANTED.

## FACTUAL BACKGROUND

This case involves two easements that private landowners granted to the federal government in the 1960s.  Plaintiffs are Oregon limited liability companies that own and lease property in Crook County, Oregon, known as Waibel Ranch.  Pls.' Second Am. Compl. ("SAC") ¶ 1, ECF 140.

### A.    Teaters Road Easement

On August 31, 1964, Plaintiffs' predecessor-in-interest, North Fork Livestock Company, granted the United States a perpetual access road easement on Teaters Road ("Teaters Road Easement").  *Id.* ¶ 3; *see* Ex. 2 at 4.  The easement included the right for the public to use Teaters Road to access federal land administered by the United States Forest Service ("USFS").  *Id.* ¶ 6; Ex. 2 at 4.  Specifically, the United States maintained the right to "locate, construct, relocate, maintain, control and repair a roadway over and across" portions of the Waibel Ranch for the "full use" of the United States, its licensees, and permittees, "including the right of access for the people of the United State*s . . . .*"  Declaration of Faith Simitz ("Simitz Decl.") Ex. C at 4, ECF 111.

From 1964 through 2015, the general public used Teaters Road to access federal land without any restriction or landowner permission.  Declaration of Cameron Teater ("Teater Decl.") ¶ 3, ECF 117.  Plaintiffs acquired the property in 2013.  Simitz Decl. ¶ 8.c.  Plaintiffs allege that from the time that they owned and leased the property in 2013 through 2015, the general public committed constant property rights violations on Plaintiffs' property, including poaching, trespassing, off-road vehicle damage, antler hunting, campfires, and littering.  SAC ¶

8.  They also allege that Defendants have not adequately maintained the road.  *Id.* ¶ 6.  Before 2015, the Bureau of Land Management ("BLM") had refused to abandon the public easement despite requests from Plaintiffs.  *Id.* ¶ 15; Declaration of Julie Waibel ("Julie Waibel Decl.") ¶ 7, ECF 121; Declaration of Brad Waibel ("Brad Waibel Decl.") ¶ 8, ECF 121; Pls.' Resp. Defs.' Mot. Dismiss ("Pls.' Resp. Mot. Dismiss") Ex. 6, ECF 120.

According to Plaintiffs, the legal description of the easement contains a 350-foot gap in the middle of Teaters Road.  SAC ¶ 4.  In 1984, the BLM apparently became aware of the 350-foot gap in the easement description when it commissioned a resurvey of portions of the property.  *Id.* ¶ 7.  Neither Plaintiffs—nor their predecessors in interest—received the results of the 1984 survey.  *Id.*  In late 2014, Plaintiffs authorized a survey of the area where they believed that "the road was not in a proper location."  Brad Waibel Decl. ¶ 9.  As a result of that survey, Plaintiffs discovered the gap in the easement.  *Id.*; SAC ¶ 9.

In February 2015, Plaintiffs' counsel "wrote to the BLM concerning the continued misuse of the easement by the general public, as well as advising [the BLM] of the discovered gap in the legal description."  Brad Waibel Decl. ¶ 10; *see* Pls.' Resp. Mot. Dismiss Ex. 5 at 1-2.  Approximately six weeks later, the assistant BLM District Manager informed Plaintiffs that the BLM had reviewed the easement issue and concluded that "the easement was void."  Brad Waibel Decl. ¶ 10.  The assistant BLM District Manager also said that "the road is yours and you can close it off to the public."  *Id.*

On April 13, 2015, the BLM issued a press release announcing the closure of Teaters Road.  Pls.' Resp. Mot. Dismiss Ex. 6.  In the press release, the BLM indicated that although it did not believe that the closure of the road was in the best interest of the public, "[t]he landowner was able to proceed with the closure because [the easement] did not cover the entire length of

Teaters Road." *Id.* The press release further noted that "local businesses and agencies will be able to retain administrative use for business purposes . . . ." *Id.* One week later, in separate statements reported to the media, the BLM noted that the gap in the easement had allowed Plaintiffs to "move forward with the closure on [their] own." Declaration of Lisa M. Clark ("Clark Decl.") Ex. B at 2, ECF 123-2. The BLM noted that they were continuing to review the issue and that they "would like to see the road remain open . . . ." *Id.*

In the summer of 2015, Plaintiffs installed gates and closed the road to the public. SAC ¶ 9. Pursuant to an agreement with the BLM, Plaintiffs constructed gates at the entry points of the property and placed signs at both gates stating that the road was closed to the general public. *Id.* After the gates were constructed, Plaintiffs continued to allow the BLM, USFS agency personnel, law enforcement, and adjacent property owners to access the road. *Id.* ¶ 10.

In September 2015, however, the BLM reversed course: The BLM stated that there was not a gap in the easement description and threated Plaintiffs with trespass if they continued to prevent the public from accessing Teaters Road. *Id.* ¶ 11. Plaintiffs did not comply with the United States's demand to restore public access and instead initiated this action to quiet title.[1]

B.      *Big Summit Prairie Ranch Easement*

The BLM administers two island parcels within Plaintiffs' property that are located in an area known as Big Summit Prairie Ranch. *Id.* ¶ 40. The two island parcels are accessible via a gate on the north side of Big Summit Prairie Ranch. *Id.* ¶¶ 39, 40.

In July 1966, Plaintiffs' predecessors in interest, the Suttons and Pennys, conveyed a perpetual access road easement to the United States in the Big Summit Prairie Ranch area of

---

[1] Until December 2021, Plaintiffs allowed some access to Teaters Road for USFS land management projects, but the general public has remained locked out of the road. Def. Mot. Relief 2-3, ECF 132. Since December 2021, Plaintiffs have allegedly "maintain[ed] locked gates at Teaters Road and prevent[ed] the Forest Service from accessing Teaters Road." *Id.* at 3.

their property ("Big Summit Prairie Easement"). *Id.* ¶ 37; *see* Ex. 6 at 10. The recorded easement provides the United States and its assigns with a perpetual easement and right-of-way, "including but not limited to the right and privilege to locate, construct, relocate, maintain and repair a roadway over and across" the Big Summit Prairie Ranch area. SAC Ex. 6 at 1. The easement was granted for the "full use as a roadway by the [United States] and its licensees," without any explicit reference to any right of public access. *Id.* at 6; Simitz Decl., Ex. K at 6. Plaintiffs acquired the property underlying or abutting the Big Summit Prairie Easement in 2015. Simitz Decl. ¶ 15.

According to Plaintiffs, the Big Summit Prairie Easement does not provide for any public access. SAC ¶ 38. From the 1960s until 2021, the United States utilized the easement "for administrative purposes and fire access" only, with no public use. Brad Waibel Decl. ¶¶ 24-25. Access to the easement is through a gate on the north side of Big Summit Prairie Ranch, and Plaintiffs allege that both Defendants and Plaintiffs, along with Plaintiffs' predecessors-in-interest, had locked the gate for over sixty years. SAC ¶¶ 3, 8.

In 2021, Plaintiffs were informed of the United States's position that the easement included public access and that Plaintiffs could not continue to lock the gates. Declaration of Bob Williams ("Williams Decl.") ¶ 22. As a result, Plaintiffs included a quiet title claim on the Big Summit Prairie easement in this action. *See* First Am. Compl. ("FAC"), ¶¶ 34-43, ECF 104.

## PROCEDURAL BACKGROUND

In 2015, Plaintiffs filed a declaratory action in state court in Crook County, and Defendant removed the case to federal court on November 4, 2015. ECF 1. Plaintiffs' initial complaint sought declaratory relief and specific enforcement of an agreement concerning the United States's easement on Teaters Road. Compl. ¶¶ 11-19, ECF 1-2.

Page 5 – FINDINGS AND RECOMMENDATION

On November 24, 2015, the case was stayed pending ongoing settlement negotiations. November 24, 2015, Order, ECF 4. In May 2016, the parties entered into what Plaintiffs allege was a new agreement with the United States concerning Teaters Road. SAC ¶ 26. That agreement was described as a "Joint Motion for Further Extended Stay of Proceedings" and was filed in this Court. Joint Mot. Stay, ECF 30. The agreement concerned the construction of an alternative road to Teaters Road and the disposition of a 160-acre parcel that the United States owned within Waibel Ranch. SAC ¶ 26. The agreement also set forth a process for the United States's relinquishment of the Teaters Road easement and the sale of the land. *Id.* In late 2017, however, the BLM apparently undermined the goals and objectives of the 2016 agreement by failing to acknowledge the standards set for the road construction and that Plaintiffs were subject to a $100,000 cap on the costs to construct the road. *Id.* ¶ 28.

The stay of this matter was lifted on October 10, 2021, when the Court was advised that the parties' most recent mediation was not successful. September 17, 2021, Order, ECF 99. On October 8, 2021, Plaintiffs filed their First Amended Complaint ("FAC"), which for the first time addressed both the Teaters Road Easement and Big Summit Prairie Easement. *See* FAC. On March 30, 2022, Plaintiffs were granted leave to amend, March 30, 2022, Order, ECF 142, and Plaintiffs subsequently filed their Second Amended Complaint ("SAC"). SAC, ECF 140.

Plaintiffs allege six claims for relief in their Second Amended Complaint: (1) a quiet title claim for the Teaters Road Easement pursuant to 28 U.S.C. § 2409(a), *id.* ¶¶ 14-19; (2) a quiet title or "supplemental jurisdiction" claim seeking declaratory judgment that the parties entered into a 2015 agreement to close Teaters Road; (3) a "supplemental jurisdiction" claim seeking declaratory judgment that the parties entered into a 2016 agreement to build a new road and close public access to Teaters Road, among other declarations, *id.* ¶¶ 24-30; (4) a "supplemental

Page 6 – FINDINGS AND RECOMMENDATION

jurisdiction" claim of breach of good faith and fair dealing seeking declaratory judgment that is identical to Plaintiffs' third claim for relief, *id.* ¶¶ 31-34; (5) a quiet title claim for the Big Summit Prairie Easement, *id.* ¶¶ 35-43; and (6) an alternative claim for quiet title of the Big Summit Prairie Easement for abandonment of public access via the easement, *id.* ¶¶ 44-47.

Defendant has now filed a Motion to Dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1).  Defs.' Mot. Dismiss, ECF 110.  Defendant originally sought dismissal of Plaintiffs' First Amended Complaint.  Before the Court held oral argument or took Defendant's Motion to Dismiss under advisement, the Court granted Plaintiffs' Motion for Leave to File a Second Amended Complaint, ECF 142.  Accordingly, because the SAC is now the operative complaint, the Court considers Defendant's Motion to Dismiss Plaintiffs' claims set forth in the SAC.

### LEGAL STANDARD

Rule 12(b)(1) of the Federal Rules of Civil Procedure governs motions to dismiss for lack of subject matter jurisdiction.  Fed. R. Civ. P. 12(b)(1).  When a party challenges subject matter jurisdiction, the burden of proof is on the party asserting that jurisdiction exists.  *See Rattlesnake Coal v. E.P.A.*, 509 F.3d 1095, 1102 n.1 (9th Cir. 2007); *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986) (holding that "[t]he party seeking to invoke the court's jurisdiction bears the burden of establishing that jurisdiction exists") (citations omitted).

"In evaluating the Rule 12(b)(1) motion to dismiss, the district court [may] consider[] affidavits furnished by both parties.  This is proper because Rule 12(b)(1) attacks on jurisdiction can be either facial, confining the inquiry to allegations in the complaint, or factual, permitting the court to look beyond the complaint." *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003).  Further, "the district court may rely on affidavits to make factual

findings in deciding question of jurisdiction on a motion to dismiss." *Bailey v. United States*, 642 F.2d 344, 347 (9th Cir. 1981) (citation omitted).

"Ordinarily, a case dismissed for lack of subject matter jurisdiction should be dismissed without prejudice so that a plaintiff may reassert [his] claims in a competent court." *Frigard v. United States*, 862 F.2d 201, 204 (9th Cir. 1988).  However, if there is no possibility of curing the jurisdictional defect, dismissal with prejudice is proper.  *Id.*

## DISCUSSION

Defendant argues that all Plaintiffs' claims in their Second Amended Complaint should be dismissed for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1).  Defs.' Mot. Dismiss 8-19.  Defendants assert that Plaintiffs' first and fifth claims for relief, which seek to quiet title as to the Teaters Road and Big Summit Prairie easements respectively, are barred by a twelve-year jurisdictional statute of limitations pursuant to the Quiet Title Act, 28 U.S.C. § 2409a.  *Id.* at 10-18.  Defendant also asserts that the United States has not waved sovereign immunity for the contract or quasi-contract-based claims that Plaintiffs allege in their second, third, and fourth claims for relief.  *Id.* at 8-10.

Defendant's Motion to Dismiss should be granted.  As discussed in detail below, Plaintiffs' first, fifth, and sixth claims for relief should be dismissed with prejudice because they are barred by the Quiet Title Act's twelve-year statute of limitations.  Plaintiffs' second, third, and fourth claims for relief should be dismissed without prejudice because they are barred by sovereign immunity, and Plaintiffs' only remedy with respect to those claims is to file an action in the U.S. Court of Federal Claims.

**I.      Statute of Limitations for Quiet Title Claims – Claims One, Five, and Six.**

  *A.      The Quiet Title Act's Statute of Limitations*

Under the Quiet Title Act ("QTA"), the United States may be named as a party defendant "to adjudicate a disputed title to real property in which the United States claims an interest."  28 U.S.C. § 2409a(a).  "[B]oth disputes over the right to an easement and suits seeking a declaration as to the scope of an easement fall within the purview of the QTA."  *Robinson v. United States*, 586 F.3d 683, 686 (9th Cir. 2009).

The QTA contains a twelve-year statute of limitations.  28 U.S.C. § 2409a(g) (noting that a QTA action "shall be barred unless it is commenced within twelve years of the date upon which it accrued.").  The limitations period contained in the QTA "is jurisdictional. The [QTA] is a waiver of sovereign immunity.  If the statute of limitations has run on a waiver of sovereign immunity, federal courts lack jurisdiction."  *Skranak v. Castenada*, 425 F.3d 1213, 1216 (9th Cir. 2005).  Additionally, courts must strictly construe the QTA's statute of limitations.  *State of California v. Yuba Goldfields, Inc.*, 752 F.2d 393, 396 (9th Cir. 1985).

The twelve-year limitations period begins to run "on the date the plaintiff or his predecessor in interest knew or should have known of the claim of the United States."  28 U.S.C. § 2409a(g).  The phrase "'should have known' imparts a test of reasonableness."  *Shultz v. Dep't of Army*, 886 F.3d 1157, 1160 (9th Cir. 1989) (quoting 28 U.S.C. § 2409a(g)).  A claim accrues when the United States's actions "would have alerted a reasonable landowner" to the adverse interest of the United States.  *Id.*  "The crucial issue in the statute of limitations inquiry is whether the plaintiff had notice of the federal claim, not whether the claim itself is valid."  *Kingman Reef Atoll Invs., L.L.C. v. United States*, 541 F.3d 1189, 1197 (9th Cir. 2008).

A Court in this district has recognized that "[s]ubsection 2409(g)'s 'knew or should have known' standard is expansive." *LNG Dev., LLC v. U.S. Army Corps of Engineers*, No. 3:14-cv-01239-AC, 2015 WL 5155079, at *7. "Formal or recorded documents can satisfy the standard, but the scope of the QTA's notice standard is not limited to recorded documents of valid claims." *Id.* (citing *State of Cal. ex rel. State Land Comm'n v. Yuba Goldfields, Inc.*, 752 F.2d 393, 396 (9th Cir. 1985). "'[N]otice of a government claim that creates even a cloud on that title may be sufficient to trigger the limitations period.'" *LNG Dev., LLC*, 2015 WL 5155079, at *7 (quoting *Kingman Reef Atoll Investments, L.L.C. v. United States*, 545 F. Supp. 2d 1103, 1111 (D. Haw. 2007), *aff'd* 541 F.3d 1189 (9th Cir. 2008) (quoting *Michel v. United States*, 65 F.3d 130, 132 (9th Cir. 1995) (per curiam))). Thus, notice of an "interest that raises questions that may affect the claim of title and pose problems in the future" is sufficient. *Robinson*, 586 F.3d at 687 (cleaned up). "Even where the government's interest is based on a null deed, such governmental interest, even without legal title, constitutes a cloud on plaintiff's title sufficient to satisfy the notice provision." *Kingman Reef*, 545 F. Supp. 2d at 1111 (citing *Knapp v. U.S.*, 636 F.2d 279, 283 (10th Cir. 1980)).

"The government's use of the land also is sufficient to meet subsection 2409(g)'s knew or should have known' standard." *LNG Dev., LLC*, 2015 WL 5155079, at *7. "The existence of one uncontroverted instance of notice suffices to trigger the limitations period." *State of Nevada v. U.S.*, 731 F.2d 633, 635 (9th Cir. 1984). "The government's use need not be openly and obviously hostile." *LNG Dev., LLC*, 2015 WL 5155079, at *7 (citing *Shultz*, 886 F.2d at 1160).

B.    *Claim One – Teaters Road*

Plaintiffs' first claim seeks to quiet title on the United States's easement on Teaters Road. SAC ¶ 16. Defendant moves to dismiss this claim as untimely because, as Plaintiffs concede,

"recordation of that easement[] would have put the owners on notice that the government had some interest in Teater's [*sic*] Road through Waibel Ranch."  Pls.' Resp. Mot. Dismiss 19. Defendant further moves to dismiss Plaintiffs' first claim because, as Plaintiffs again concede, the public utilized Teaters Road through Waibel Ranch from the date of recording in 1964 through 2015 when Plaintiffs closed the road to public access.  *Id.* at 2-3, 19; Defs.' Mot. Dismiss at 8-10.  Despite these concessions, Plaintiffs offer two arguments as to why their claims are not barred by the statute of limitations, neither of which the Court finds availing.

First, Plaintiffs assert that there is a 350-foot gap in the easement that was not discovered until the land was surveyed in 2015 and, as a result, the statute of limitations did not begin to run until that discovery.  Pls.' Resp. Motion Dismiss 18-19.  This assertion is incorrect.  Even if a 350-foot gap in the easement exists, (1) the language of the recorded easement, which granted the United States "full use" to "locate, construct, relocate, maintain, control and repair a roadway over and across" Teaters Road, Simitz Decl. Ex. C at 4; and (2) the United States's actual full use of the road both constituted a "cloud on legal title" that was sufficient to satisfy the notice provision of section 2409(g).  *See Kingman Reef*, 545 F. Supp. 2d at 1111.  Moreover, the crucial issue in the statute of limitations inquiry is whether Plaintiffs had notice of the United States's claim to an interest in the 350-foot gap—not whether the claim itself is, or would be, valid.  *See id.*; *see State of Nevada*, 731 F.2d at 635 (recognizing that factual disputes regarding the validity of a United States's claim "are not relevant to the statute of limitations notice issue").  Because Plaintiffs' predecessors-in-interest had notice that the United States claimed full use of Teaters Road, including the alleged 350-foot gap, this Court finds that Plaintiffs' predecessors-in-interest

had notice of the United States's claim decades before Plaintiffs filed suit.[2]

Second, Plaintiffs argue that the "[s]tatute of [l]imitations did not begin until 2015 because there was an agreement between the BLM and [Plaintiffs] that the easement was void." Pls.' Resp. Mot. Dismiss 19. The Court disagrees. Although a claim for abandonment could trigger a new statute of limitations, *see Michel*, 65 F.3d 130,[3] Plaintiffs have not made a plausible showing of abandonment here. "[T]he United States cannot be deemed to have abandoned a claim of ownership for purposes of § 2409a(g) unless it 'clearly and unequivocally abandons its interest,' as evidenced by documentation from a government official with authority to make such decisions on behalf of the United States." *Kingman Reef Atoll Invs., L.L.C.*, 541 F.3d at 1200-01 (citing *Spirit Lake Tribe v. North Dakota*, 262 F.3d 732, 739 (8th Cir. 2001)).[4]

Here, there is no allegation that a government official with the requisite authority clearly and unequivocally abandoned the United States's interest in the easement. Plaintiffs do not

---

[2] Even if the existence of the alleged 350-foot gap could provide a basis for overcoming the twelve-year statute of limitations, Plaintiffs cannot demonstrate that their predecessors-in-interest could not have known that the gap existed. Plaintiffs do not point to any case law stating that a plaintiff can indefinitely delay a survey of their land, and then use the results of a survey that occurs after twelve years to quiet title.

[3] The United States argues that the issue of abandonment is irrelevant because the statute of limitations had already run when the United States purported to abandon its easement. Defs.' Reply Supp. Mot. Dismiss ("Defs.' Reply") 15, ECF 122. The Ninth Circuit has rejected this argument. *See Michel*, 65 F.3d at 132 ("If the government has apparently abandoned any claim it once asserted, and then it reasserts a claim, the later assertion is a new claim and the statute of limitations for an action based on that claim accrues when it is asserted.") (quoting *Shultz*, 886 F.2d at 1161).

[4] The Ninth Circuit applies a lower standard for determining accrual based on abandonment under section 2409(g) when the plaintiffs allege an easement over government property. *See Kingman Reef Atoll Invs., L.L.C.*, 541 F.3d at 1201 (discussing differing standards). In that instance, the plaintiffs must show that at some time subsequent to the running of the initial statute of limitations, they "had reason to believe the government did not continue to claim an interest" in the easement. *Shultz*, 886 F.2d at 1161. Plaintiffs fail to identify any authority (and this Court can find none) that would suggest that this lower standard applies where, as here, the government has a property interest in an easement over private property.

allege that the assistant BLM District Manager who purportedly declared the easement "void," SAC ¶ 9, had the authority to abandon the United States's property interests. Additionally, the BLM's public statements regarding the closure of Teaters Road to the public did not "clearly and unequivocally" abandon United States's interest in the easement. Defs.' Reply 15-17; Defs.' Resp. Pls.' Mot. Leave Am. 14-15, ECF 128. Accordingly, Plaintiffs cannot demonstrate that the statute of limitations accrued in 2015 under section 2409a(g) when the regional BLM office allegedly agreed that the easement was void and announced the closure of Teaters Road to public use.

In sum, neither Plaintiffs' assertions regarding the alleged gap in the easement nor their claims regarding the alleged agreement that the easement was void provide a basis to overcome the statute of limitations. Consequently, Plaintiffs' first claim for relief should be dismissed. Because no amendment could cure the jurisdictional defect, dismissal should be with prejudice.

### C.    Claims Five and Six – Big Summit Prairie

Plaintiffs' fifth and six claims for relief seek to quiet title on the United States's easement across Big Summit Prairie. The parties agree that the United States has a valid easement over Big Summit Prairie. They dispute whether scope of the easement includes public access. SAC ¶ 38. In their fifth claim, Plaintiffs seek to quiet title on the ground that the language of the recorded deed does not provide for public use. SAC ¶¶ 35-43. Alternatively, in their sixth claim, Plaintiffs argue that the United States has abandoned any claim for public use. SAC ¶¶ 44-47. The United States argues that both claims are untimely because the recorded deed was sufficient to put Plaintiffs on notice of the United States's claim to an interest in the land, and Plaintiffs' abandonment claim due to inaction fails as a matter of law. Defs.' Mot. Dismiss 15-18. For reasons discussed below, the Court concludes that both claims are untimely.

i.      Claim Five – Quiet Title of Big Summit Prairie Easement

For the statute of limitations period to begin in a case involving the QTA, "the government's claim must be *adverse* to the claim asserted by the [plaintiffs]." *See Michel*, 65 F.3d at 131-32 (emphasis added). However, "there is no requirement that the Government's interest be 'adverse' in the sense that the interests are contested by either Defendants or their predecessors." *United States v. Hoyte*, No. C10-2044BHS, 2012 WL 750319, *4 (W.D. Wash. Mar. 7, 2012) (quoting *Shultz*, 886 F.2d at 1160). Rather, to determine whether the United States's interest is adverse, the Court "must determine whether and when the [p]laintiff or its predecessors in interest knew or should have known of the United States' belief" regarding the scope of the easement. *Kootenai Canyon Ranch, Inc. v. U.S. Forest Serv.*, 338 F. Supp. 2d 1129, 1133 (D. Mont. 2004). A recorded deed can be sufficient to put the landowner on notice that the government claims an interest in public access of an easement that is adverse to the landowner, even if the full contours of the government's claim is not clear from the deed. *See Sawtooth Mountain Ranch LLC v. United States*, No. 1:19-CV-00118-CWD, 2022 WL 558354, at *7 (D. Idaho Feb. 24, 2022) (noting that a conservation deed providing for public access generally was sufficient to put landowner on notice); *Hoyte*, 2012 WL 750319 (recording of deed alone was sufficient to put landowner on notice that the government could interpret certain terms in a particular manner).

In this case, the grant of full access of the Big Summit Prairie Easement to the United States and its licensees, standing alone, would have been sufficient to alert a reasonable landowner that the United States could claim a right to public access. To be sure, the Big Summit Prairie Easement did not mention public access: the easement was granted for the "full use as a roadway by the [United States] and its licensees." Simitz Decl., Ex. K at 6. Despite the

Page 14 – FINDINGS AND RECOMMENDATION

lack of an express reference to a public right of access, the term "licensees" provided sufficient notice that the United States could claim an interest in public use over the Big Summit Prairie Easement.  When construing language in a similar easement, a Judge in this District stated:

> [T]he absence of express permissible uses does not create an ambiguity. The easements contain no restrictions on purpose or use. Rather, the easements granted the BLM "full use" and "control" of the roadway. . . . Additionally, when "licensee and permittees" are given their ordinary, plain meaning, the term includes the public as implied licensees. [T]he easements present an unambiguous unrestricted grant to the BLM including the right to allow public access.

*Cal-Neva Land & Timber v. U.S.*, 70 F. Supp. 2d. 1151, 1158-61 (D. Or. Sept. 30, 1999).

Additionally, the Ninth Circuit has observed that, at least in the context of public lands, the general public is a licensee to the U.S. government.  *See US v. Curtis-Nevada Mines, Inc.*, 611 F.2d 1277, 1283 (9th Cir. 1980).  Although those cases are not dispositive of the merits of Plaintiffs' claim, they do demonstrate that that a reasonable landowner should have known of the United States's belief that the term "licensees" includes the general public.[5]

This Court is mindful that there is no evidence that Plaintiffs or their predecessors-in-interest were ever notified of the United States's belief that the Big Summit Prairie Easement included a right to public access.  But that notice is not required.  The fact that the recorded deed could reasonably be interpreted to allow for public access was sufficient.  Importantly, the QTA "does not require validity or the 'full contours' of the federal interest to be determined before

---

[5] The language of the 1966 Big Summit Prairie Easement stands in sharp contrast to the 1964 Teaters Road Easement, which provides that it is "for full use as a roadway by the [United States], its licensees and permittees, *including the right of access for the people of the United States* . . . ."  Simitz Decl., Ex. C at 4 (emphasis added).  A landowner confronted with both deeds—as Plaintiffs' predecessors-in-interest were—could have reasonably concluded that these easements had different scopes.  This is particularly true given the public's actual use of the Teaters Road Easement but not the Big Summit Prairie Easement.  Nevertheless, the standard is not what Plaintiffs reasonably believed was the actual scope of the easement.  Rather, accrual is measured from when Plaintiffs should have known of the United States's belief that the term "licenses" could include the general public.

[the] twelve-year period expires; all that is necessary is recognition of a federal interest that potentially affects title to the[] property." *LNG Dev., LLC*, 2015 WL 5155079, at \*12. "'The government's claim need not be clear and unambiguous. . . . All that is necessary is a reasonable awareness that the Government claims *some* interest adverse to the plaintiffs.'" *Kingman Reef Atoll Investments, L.L.C.*, 541 F.3d at 1198 (quoting *Spirit Lake Tribe*, 262 F.3d at 738) (emphasis added). Thus, given the language of the recorded deed, Plaintiffs had a reasonable awareness that the United States claimed *some* interest in the Big Summit Prairie Easement.

Accordingly, Plaintiffs fifth claim should be dismissed as untimely for being barred by the statute of limitations. Further, their fifth claim should also be dismissed with prejudice, as no amendment could cure the jurisdictional defect.

### ii.    Claim Six – Abandonment of Big Summit Prairie Easement

Plaintiffs' sixth claim for relief—which asserts that the United States abandoned any interest in the public's use of Big Summit Prairie through lack of use—should also be dismissed. Plaintiffs' claim for abandonment is premised solely on fact that the United States did not allow the public to utilize the easement for over 50 years. Pls.' Reply Defs.' Resp. Pls.' Mot. Leave Am. ("Pls.' Reply Mot. Leave Am.") 4, ECF 131. This argument fails as a matter of law. Government officers "cannot by their conduct cause the Government to lose its valuable rights by their acquiescence, laches, or failure to act." *United States v. California*, 332 U.S. 19, 40 (1947). The United States's inaction with respect to the Big Summit Prairie Easement cannot reasonably be construed as abandonment of its claim of interest. *See Kingman Reef Atoll Invs., L.L.C.*, 541 F.3d at 1199. As such, Plaintiffs' sixth claim for relief should be dismissed with prejudice for lack of jurisdiction.

**II.    Sovereign Immunity – Claims Two, Three, and Four**

*A.    Sovereign Immunity*

"[T]he United States, as sovereign, is immune from suit save as it consents to be sued, and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit.  A waiver of sovereign immunity cannot be implied but must be unequivocally expressed." *Tobar v. United States*, 639 F.3d 1191, 1195 (9th Cir. 2011) (quoting *United States v. Mitchell*, 445 U.S. 535, 538 (1980)).  Congressional waivers of the sovereign immunity of the United States "must be strictly observed and exceptions thereto are not to be implied." *Lehman v. Nakshian*, 453 U.S. 156, 161 (1981) (quotation and citation omitted).

Sovereign immunity is a defense that may be raised under Federal Rule of Civil Procedure 12(b)(1). *Tobar*, 639 F.3d at 1194.  A party asserting a claim against the federal government bears "the burden of establishing that its action falls within an unequivocally expressed waiver of sovereign immunity by Congress." *Dunn & Black P.S. v. United States*, 492 F.3d 1084, 1088 (9th Cir. 2007).

*B.    Waiver of Sovereign Immunity Under the Quiet Title Act*

The Quiet Title Act, 28 U.S.C. § 2409a(a), provides for a limited waiver of federal sovereign immunity. *See Gardner v. Stager*, 103 F.3d 886, 888 (9th Cir. 1996).  The Ninth Circuit has held that "two conditions must exist before a district court can exercise jurisdiction over an action under the Quiet Title Act: 1) the United States must claim an interest in the property at issue; and 2) there must be a disputed title to real property between interests of the plaintiff and the United States." *Leisnoi, Inc. v. United States*, 267 F.3d 1019, 1023 (9th Cir. 2001).  "[A] suit that actually challenges the federal government's title, however denominated, falls within the scope of the QTA regardless of the remedy sought." *Robinson*, 586 F.3d at 688.

As relevant here, the Quite Title Act does not apply to actions that could have been brought under the Tucker Act, 28 U.S.C. § 1346(a). 28 U.S.C. § 2409a. The Tucker Act gives the United States Court of Federal Claims exclusive jurisdiction over "any claim against the United States founded . . . upon any express or implied contract with the United States." 28 U.S.C. § 1491(a)(1); *N. Side Lumber Co. v. Block*, 753 F.2d 1482, 1484 (9th Cir. 1985). The Tucker Act permits "the Claims Court to grant money damages against the government in contract actions but not injunctive or declaratory relief." *Block*, 753 F.2d at 1485. In addition, under 28 U.S.C. § 1346(a)(2), which is known as the "Little Tucker Act," a federal district court has jurisdiction over a claim founded upon "any express or implied contract with the United States," when the amount sought is $10,000 or less. *Price v. U.S. General Servs. Admin.*, 894 F.2d 323, 324 (9th Cir. 1990).

In this case, Plaintiffs invoke this Court's jurisdiction under the Quiet Title Act with respect to their second claim for relief, which is premised on the alleged 2015 agreement to close Teaters Road due to the gap in and misuse of the easement. SAC ¶ 19. In arguing that the Quiet Title Act waives sovereign immunity for their second claim, Plaintiffs assert that "if title is at issue, and there is an agreement regarding that title, the resolution of that agreement regarding title would be appropriate under the Quiet Title Act." Pls.' Reply Mot. Leave Am. at 4. Plaintiffs also invoke this Court's jurisdiction under Quiet Title Act for their third and fourth claims for relief, which concern the alleged 2016 agreement to construct a new road (among other purported agreements). *Id.* at 4-5. Plaintiffs assert that these claims "clearly fall under the general penumbra of a Quiet Title Action" because without resolution of these issues, "the title interest in both roads will remain in limbo." *Id.*

Page 18 – FINDINGS AND RECOMMENDATION

This Court is mindful not to liberally construe the waiver of sovereign immunity in the Quiet Title Act. That waiver specifically allows actual challenges to the Government's title. *See Robinson*, 586 F.3d at 688. A separate agreement that is not recorded in the title is not part of the Government's title and cannot be challenged through a quiet title action. Rather, it is akin to an assertion of a breach of an express or implied contract that can only be brought against the United States under the provisions of the Tucker Act. Because Tucker Act claims are excluded from the Quiet Title Act, it is reasonable to infer that Congress did not intend for the Quiet Title Act's waiver of sovereign immunity to extend to agreements regarding title.

Moreover, this Court cannot construe Plaintiffs' claims in a manner that would allow the Court to exercise jurisdiction under the Tucker Act. Plaintiffs seek extensive declaratory and injunctive relief, which cannot be obtained under the Tucker Act. *See Block*, 753 F.2d at 1485. Even if this Court were to construe Plaintiffs' claims as seeking monetary damages only, the amount in controversy would be well in excess of the $10,000 limit that would allow this Court to maintain jurisdiction. *See Price*, 894 F.2d at 324. Thus, to the extent that Plaintiffs have any remedy for their claims regarding the alleged breach of the agreements, it could only be through an action in the United States Court of Federal Claims.[6]

In sum, the Quiet Title Act does not waive sovereign immunity for Plaintiffs' second, third, and fourth claims for relief, and those claims should be dismissed for lack of jurisdiction.

---

[6] In its Motion to Dismiss, the United States initially argued that Plaintiffs lacked any "viable claims" related to these agreements because they sought declaratory and injunctive relief. Defs.' Mot. Dismiss 9. In subsequent briefing, however, the United States acknowledged that Plaintiffs "may pursue a section 1491(a)(1) Tucker Act action in the U.S. Court of Federal Claims, because they have identified an express or implied agreement with the government, on which they expended an identified monetary sum, and they have asserted that the government supposedly broke the agreement." Defs.' Resp. Pls.' Mot. Leave Am. 8.

The dismissal should be without prejudice given Plaintiffs' ability to bring an action in the United States Court of Federal Claims concerning the alleged agreements at issue in this case.

### C.    Supplemental Jurisdiction

Plaintiffs also allege that this Court can exercise supplemental jurisdiction under 28 U.S.C. § 1367 over their second, third, and fourth claims for relief.  SAC ¶¶ 21, 25, 32; Pls.' Resp. Mot. Dismiss 18-19.[7]  28 U.S.C. § 1367(a) grants federal courts supplemental jurisdiction over state claims related to certain federal claims in any civil action of which the district court has original jurisdiction.  "That section cannot 'operate as a waiver of the United States sovereign immunity.'"  *Dunn & Black, P.S. v. United States*, 492 F.3d 1084, 1088 n.3 (9th Cir. 2007) (quoting *Wilkerson v. United States*, 67 F.3d 112, 119 (5th Cir. 1995) (noting that "[s]overeign immunity and subject matter jurisdiction are distinct doctrines.")).  Based on this well-established precedent, the Court's supplemental jurisdiction does not operate as a waiver of sovereign immunity for Plaintiffs' second, third, and fourth claims.  As such, Plaintiffs' second, third, and fourth claims for relief for should be dismissed.

### RECOMMENDATION

Defendant's Motion to Dismiss, ECF 110, should be GRANTED.  Plaintiffs' first, fifth, and sixth claims should be dismissed with prejudice as they are barred by the jurisdictional statute of limitations in the Quiet Title Act, and no amendment could cure those defects.  Plaintiffs' second, third, and fourth claims for relief should be dismissed without prejudice as

---

[7] Plaintiffs' SAC also alleges that relief can be granted under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02.  But Plaintiffs do not appear to rely on the Declaratory Judgment Act as a basis for this Court's jurisdiction, nor could they.  *See Stock W., Inc. v. Confederated Tribes of the Colville Rsrv.*, 873 F.2d 1221, 1225 (9th Cir. 1989) ("To obtain declaratory relief in federal court, there must be an independent basis for jurisdiction.").

they are barred by sovereign immunity, and Plaintiffs can bring an appropriate action in the United States Court of Federal Claims.

## SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge.  Objections, if any, are due fourteen (14) days from service of the Findings and Recommendation.  If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

A party's failure to timely file objections to any of these findings will be considered a waiver of that party's right to de novo consideration of the factual issues addressed herein and will constitute a waiver of the party's right to review of the findings of fact in any order or judgment entered by a district judge. These Findings and Recommendation are not immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment.

DATED this 14th day of April, 2022.

_____
ANDREW HALLMAN
United States Magistrate Judge

Page 21 – FINDINGS AND RECOMMENDATION